UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEXTER HUTCHINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    CIV-24-852-R |
| | ) |
| WADE GOURLEY, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER

Plaintiff Dexter Hutchins, proceeding pro se, initiated this action under 42 U.S.C. § 1983 alleging that Defendants Alexander Acosta and Taylor Shaw, officers with the Oklahoma City Police Department, violated his Fourth and Fourteenth Amendment rights during a traffic stop and arrest. Now before the Court is Defendants' Motion for Summary Judgment [Doc. No. 75], to which Plaintiff responded in opposition [Doc. No. 78] and Defendants replied [Doc. No. 80].

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.... An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of

1

making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at. at 255.

## FACTUAL BACKGROUND

Pursuant to Federal Rule of Procedure 56 and Local Civil Rule 56.1, Defendants' summary judgment brief includes a statement of material facts and citations to evidentiary material. In contrast, Plaintiff's opposition brief fails to comply with these rules. The brief does not respond by correspondingly numbered paragraphs to the movant's facts nor does it cite to particular evidentiary materials in the record. *See* Fed. R. Civ. P. 56(c)(1); LCvR56.1(c)-(d). The Court has "no desire to make technical minefields of summary judgment proceedings, but neither can [it] countenance laxness in the proper and timely presentation of proof." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). Although pro se litigants are afforded some leniency, they must "follow the same rules of procedure that govern other litigants" and cannot rely on the Court to "construct[] arguments and search[] the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks and citations omitted). Because Plaintiff's brief does not comply

with applicable rules and does not controvert Defendants' statement of facts, the facts set out in Defendants' brief are deemed admitted. *See* Fed. R. Civ. P. 56(e); LCvR56.1(e); *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) ("Faced with pleadings that did not comply with either the local practice rule or summary judgment practice in general, the district court was correct to admit all facts asserted in Blue Cross's summary judgment motion that are not controverted by a readily identifiable portion of the record.") (quotation marks omitted).[1]

This action concerns a traffic stop and arrest that occurred on July 10, 2024. The key events were captured on dash camera and body camera footage from the responding officers. *See* Defs.' Exs. 3-10 [2] Oklahoma City Police Department Officer Acosta witnessed Plaintiff's vehicle commit a traffic violation by failing to activate a turn signal at least 100 feet prior to changing lanes. Officer Acosta initiated a traffic stop and Plaintiff pulled his vehicle into a parking lot.

Office Acosta then approached Plaintiff's vehicle, introduced himself, and

---

[1] Plaintiff's response brief references a "Memorandum of Evidence" and states that the municipal court dismissed the citations that were issued following the traffic stop. Plaintiff does not include a copy of his "Memorandum of Evidence." However, he may be referring to the "Memorandum of Direct Evidence" [Doc. No. 17] that was previously filed and that includes a copy of the citations. Even liberally construing Plaintiff's response brief to include this prior filing, Plaintiff has not adequately controverted Defendants' factual statement. Further, the fact that the municipal court dismissed the citations does not create a material factual dispute that precludes the grant of summary judgment.

[2] The videos capture most of the events at issue and speak for themselves. *See Scott v. Harris,* 550 U.S. 372, 380–81, (2007) (concluding that where there is video evidence showing the events at issue, courts should "view[] the facts in the light depicted by the videotape"). Although Plaintiff contends that the video footage has been altered, he provides no evidence in support of this assertion.

3

attempted to explain the reasons for the stop. Plaintiff responded by stating "I'm ready for the lies, 'cause hey, we already…we was tracking you before you was tracking me." Officer Acosta again explained the reason for the stop and asked, three times, for Plaintiff to provide his driver's license. Plaintiff did not comply. Officer Acosta warned Plaintiff that he would go to jail if he did not provide his license and ordered Plaintiff to open the car door and exit the vehicle multiple times. Plaintiff did not comply. Officer Acosta told Plaintiff that he would be charged with interfering with official process, unlocked Plaintiff's car door, pointed his pepper spray canister at Plaintiff, and warned him that he would pepper spray him. Plaintiff did not comply. Officer Acosta then unbuckled Plaintiff's seat belt, grabbed his wrist and arm, and removed him from the car.[3] Officer Acosta handcuffed Plaintiff and, shortly thereafter, Defendant Shaw and two other police officers arrived at the scene.

Plaintiff was briefly searched and placed into the back seat of Officer Acosta's patrol vehicle. While in the back seat, one of the officers approached Plaintiff's vehicle and looked through the vehicle's window and open door. Plaintiff leaned his head out of the open patrol car door and began yelling at the officer to stop searching in his car. Lt. Shaw then placed his hand on Plaintiff's shoulder to direct Plaintiff back into the car. Plaintiff was placed under arrest and transported away from the scene.

---

[3] Plaintiff's Verified Amended Complaint [Doc. No. 40] includes an attachment titled "Statement of Claim" [Doc. No. 40-3] where Plaintiff admits that Officer Acosta "asked the plaintiff for a license and registration due to an improper lane change," he "refused to give license and registration," and Officer Acosta "asked the plaintiff to get out of the car, but the plaintiff refused because the plaintiff felt his life was in danger."

At his deposition, Plaintiff testified that Lt. Shaw punched him with an open hand, "karate-chop style," in the jaw area. He also claims that the video and audio footage has been altered, disputes that he committed a traffic violation, and believes that Officer Acosta racially profiled him.

## DISCUSSION

Liberally construed, Plaintiff asserts claims against Officer Acosta and Lt. Shaw in their individual capacities for alleged violations of the Fourth and Fourteenth Amendment based on the traffic stop, arrest, use of force, and discrimination. Defendants move for summary judgment on all claims, invoking the defense of qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "When a defendant asserts qualified immunity at the summary-judgment stage, the burden shifts to the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Alcala v. Ortega*, 128 F.4th 1298, 1306 (10th Cir. 2025) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "The plaintiff must satisfy both prongs to overcome a qualified immunity defense." *Id.* (quoting *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 757–58 (10th Cir. 2021). Here, Plaintiff fails to overcome either prong of the qualified immunity defense. Even construing the facts in Plaintiff's favor, no reasonable juror could conclude that Defendants violated a constitutional right during the traffic stop or arrest. Further, even assuming there was a

constitutional violation, Plaintiff has not shown that the right was clearly established.

### A. The False Arrest Claim

Plaintiff claims that the traffic stop and arrest violated his Fourth Amendment right to be free from an unreasonable seizure. "[A] traffic stop is reasonable under the Fourth Amendment at its inception if the officer has either (1) probable cause to believe a traffic violation has occurred or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *United States v. Ramstad*, 308 F.3d 1139, 1144 (10th Cir. 2002) (internal quotation marks omitted). Notably, "[t]he officer's subjective motives for stopping the vehicle are irrelevant to the inquiry." *United States v. King*, 209 F. App'x 760, 762 (10th Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

In a similar vein, "a warrantless arrest is consistent with the Fourth Amendment when there is probable cause to believe the arrestee has committed a crime[,]" *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015), even "a very minor criminal offense." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (internal quotation marks omitted). "Probable cause does not require facts sufficient for a finding of guilt; however, it does require more than mere suspicion." *United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001) (internal quotation marks omitted).

Applying these standards, neither the traffic stop nor the arrest violated the Fourth Amendment. The video evidence shows Plaintiff's vehicle changing lanes almost immediately after engaging his turn signal. Based on Officer Acosta's personal observation of the vehicle, there was, at a minimum, a reasonable suspicion to believe that Plaintiff committed a traffic violation. *See* Okla. Stat. tit. 47, § 11-309(2) ("A vehicle shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety and then given a signal, not less than the last one hundred (100) feet traveled by the vehicle, of his or her intention to change lanes"). The traffic stop was therefore reasonable under the Fourth Amendment. *See United States v. Vercher*, 358 F.3d 1257, 1259 (10th Cir. 2004) (finding that "an officer's observation of a vehicle traveling at a high speed and close distance from the preceding vehicle, while not necessarily sufficient to convict, is sufficient to provide a reasonable suspicion to effectuate a traffic stop."); *United States v. Lara*, No. CR-22-00464-JD, 2023 WL 3259497, at *7 (W.D. Okla. May 4, 2023) (finding that officer's observation of improper turn was sufficient to provide reasonable suspicion for traffic stop); *Ross v. City of Oklahoma City*, No. CIV-15-0935-HE, 2016 WL 3029968, at *2 (W.D. Okla. May 25, 2016) (finding probable cause for traffic stop where dash cam video "shows the lane change to have been very quickly executed and without signaling for 100 feet before it was executed").

After making the stop, Officer Acosta approached Plaintiff's vehicle and requested his driver's license – an ordinary inquiry that is incident to the traffic stop. *See Rodriguez v. United States,* 575 U.S. 348, 355 (2015); *United States v. Long*, 705 F.2d 1259, 1262 (10th Cir. 1983). Plaintiff repeatedly refused to provide his driver's license, in violation of

7

Oklahoma traffic laws. *See* Okla. Stat. tit. 47 § 6-112(A) ("Upon demand of a peace officer, the licensee shall produce and provide physical possession of the driver license to the peace officer."). Plaintiff also repeatedly refused to comply with Officer's Acosta's commands to exit the vehicle. Based on this conduct, there was probable cause to arrest Plaintiff for obstructing an officer in violation of Okla. Stat. tit. 21, § 540. This statute makes it a misdemeanor crime to "willfully delay[] or obstruct[] any public officer in the discharge or attempt to discharge any duty of his or her office." Oklahoma courts have held that "words alone may suffice to support a conviction" under this statute and physical force is not required. *Trent v. State*, 777 P.2d 401, 402 (Okla. Crim. App. 1989).

Here, Plaintiff repeatedly refused to produce his license in violation of state law, repeatedly refused to comply with Officer Acosta's commands to exit the vehicle, and was argumentative. Even drawing reasonable inferences in Plaintiff's favor, these circumstances were sufficient for a reasonable officer to believe that Plaintiff was delaying and obstructing the discharge of the officer's duties. In reaching this conclusion, it is worth emphasizing that the relevant inquiry "is not whether [Plaintiff] could or would be convicted for violating the Oklahoma statute, but rather whether the officer reasonably believed he was committing the offense." *United States v. Christian*, 190 F. App'x 720, 723 (10th Cir. 2006) (finding probable cause for an arrest under the same Oklahoma statute where defendant refused officers' repeated commands to move away from the area); *see also Trent*, 777 P.2d at 403 (finding sufficient evidence to support conviction where defendant loudly and repeatedly refused to comply with instruction to leave the scene).

In short, no reasonable juror, even when construing the material facts in Plaintiff's

8

favor, could conclude that the traffic stop or arrest violated the Fourth Amendment. But even assuming there was a violation of a constitutional right, Plaintiff has not carried his burden of showing the right was clearly established. The qualified immunity defense "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (*per curiam*) (internal quotation marks omitted). "Ordinarily, to make such a showing of clearly established law in our circuit, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021) (internal quotation marks and brackets omitted). But the Supreme Court has repeatedly instructed that "the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011). A plaintiff cannot generally overcome a qualified immunity defense "simply by alleging violation of extremely abstract rights." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotation omitted).

     Plaintiff has not identified any clearly established law that is pertinent to the circumstances presented here. He has therefore failed to carry his burden and Defendants are entitled to qualified immunity. *See Cox v. Glanz*, 800 F.3d 1231, 1247 n.8 (10th Cir. 2015) (noting that a plaintiff seeking to overcome a qualified immunity defense "cannot

discharge her burden by relying upon authorities that do no more than establish general legal principles").

### B. The Use of Force Claim

Plaintiff additionally alleges that he was subjected to an unreasonable use of force during the traffic stop and arrest. A claim asserting excessive force in violation of the Fourth Amendment is analyzed "under a standard of objective reasonableness." *Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015). "To assess objective reasonableness we evaluate whether the 'totality of the circumstances' justified the use of force, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Est. of Valverde v. Dodge*, 967 F.3d 1049, 1060 (10th Cir. 2020) (quoting *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citation and quotation marks omitted).

To determine whether force was reasonable, courts are guided by three nondispositive factors, known as the *Graham* factors: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or trying to flee. *Baca v. Cosper*, 128 F.4th 1319, 1325 (10th Cir. 2025). Of course, these factors "are only aids in making the ultimate determination, which is 'whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force.'" *Tenorio*, 802 F.3d at 1164 (quoting *Est. of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008)).

Here, Plaintiff was not under arrest for a serious crime, there is no indication that he

posed an immediate threat, and although he was not cooperating, he was also not trying to flee. Still, as the Tenth Circuit has explained, "a small amount of force like grabbing [the suspect] and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment." *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007). Even construed in Plaintiff's favor, the video footage shows that the force used – both by Officer Acosta in removing Plaintiff from the car and by Lt. Shaw in directing Plaintiff back into the patrol car – was minimal. The use and amount of force did "not exceed what would have been reasonable to effectuate a lawful arrest under these circumstances" and therefore no constitutional violation occurred.

Additionally, once again, Plaintiff has not identified any clearly established law that is pertinent to the facts of this case. Defendants are therefore entitled to qualified immunity.

### C. The Equal Protection Claim

Last, Plaintiff alleges that Officer Acosta discriminated against him when he made the traffic stop. A claim "asserting selective enforcement of a law on the basis of race [is] properly brought under the Equal Protection Clause, and [] the right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003). "To withstand a motion for summary judgment, a plaintiff in a § 1983 suit challenging alleged racial discrimination in traffic stops and arrests must present evidence from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect." *Id.* at 1168. The discriminatory purpose "must be a motivating factor in the decision." *Id.*

11

Here, Plaintiff suggests that Officer Acosta engaged in racial profiling and speculates that Officer Acosta was "tracking" him and may have followed him or pulled him over because he was a black man driving out of a particular neighborhood. Apart from this speculation, Plaintiff has not pointed to any evidence from which a reasonable jury could conclude that a discriminatory purpose was a motivating factor in Officer Acosta's decision to stop or arrest him. Defendants are therefore entitled to qualified immunity on this claim.[4]

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED. A separate judgment will be entered. Defendants' Unopposed Motion to Strike or Continue the Trial Date [Doc. No. 81] is DENIED as moot.

IT IS SO ORDERED this 7th day of November, 2025.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[4] To the extent Plaintiff asserts a freestanding claim based on his allegation that evidence was falsified or the recordings were altered, there is no evidence to support this assertion and summary judgment would therefore be warranted on this claim as well.